Jesse Hindman, Cal. Bar No. 222935
**HINDMAN PC**
402 W. Broadway, Suite 1520
San Diego, CA  92101
Telephone: (619) 255-4078
Email: jesse@hindmanapc.com

Donald R. Ware, Mass. Bar No. 516260
Email: dware@foleyhoag.com
*pro hac vice* application forthcoming
Barbara A. Fiacco. Mass. Bar No. 633618
Email: bfiacco@foleyhoag.com
*pro hac vice* application forthcoming
Jeremy Younkin, Mass. Bar No. 654047
Email: jyounkin@foleyhoag.com
*pro hac vice* application forthcoming
Joanna L. McDonough, Mass. Bar No. 699054
Email: jmcdonough@foleyhoag.com
*pro hac vice* application forthcoming
**FOLEY HOAG LLP**
155 Seaport Boulevard
Boston, MA 02210
Phone: (617) 832-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

BECTON, DICKINSON AND COMPANY, SIRIGEN, INC., and SIRIGEN II LIMITED

     Plaintiffs,

     v.

BECKMAN COULTER, INC.,

     Defendant.

Case No. **'21 CV 1173 WQHMSB**

**PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

**JURY TRIAL DEMANDED**

### COMPLAINT

Plaintiffs Becton, Dickinson and Company ("BD") and its subsidiaries, Sirigen, Inc. ("Sirigen"), and Sirigen II Limited ("Sirigen II") (collectively, "Plaintiffs") file this Complaint against Defendant Beckman Coulter, Inc. ("Beckman").  In support of their claims, Plaintiffs allege as follows:

### Nature of the Action

1.     This is an action for patent infringement brought under the patent laws of the United States, 35 U.S.C. § 1 et seq.  Plaintiffs seek a judgment that Defendant has infringed and continues to infringe thirteen United States patents: U.S. Patent Nos. 8,362,193 ("the '193 patent"); 8,455,613 ("the '613 patent"); 8,575,303 ("the '303 patent"); 9,139,869 ("the '869 patent"); 9,547,008 ("the '008 patent"); 10,094,838 ("the '838 patent"); 10,288,620 ("the '620 patent"); 10,302,648 ("the '648 patent"); 10,365,285 ("the '285 patent");10,458,989 ("the '989 patent"); 10,641,775 ("the '775 patent"); 10,955,417 ("the '417 patent"); and 10,962,546 ("the '546 patent") (collectively, the "Asserted Patents").  Plaintiffs seek damages and preliminary and permanent injunctive relief.

2.     The Asserted Patents disclose and claim innovative new polymer molecules, detection systems, and methods based on the discovery of novel polymer dyes that provide both high levels of fluorescent brightness and high degrees of water solubility.  These dyes allow scientists efficiently to label and detect biological materials of interest in a sample, including small populations of difficult to detect proteins and cells. The Asserted Patents are exclusively licensed to BD in the field of flow cytometry immunoassays.

3.     An important application of the inventions is in flow cytometry, a technology that is used to analyze, sort, or count cell populations and biomarkers. The Sirigen inventions enable scientists using flow cytometry more easily to identify small cell populations that previously might go undetected, or to distinguish a multitude of cell types or cell markers that previously could be

indistinguishable, when traditional fluorescent dyes were used.  For BD, this pioneering technology has opened the door to new business opportunities and provided a competitive advantage, allowing it to build market leadership and strengthen its brand as the innovator in flow cytometry reagents, both in the research-use-only ("RUO") market as well as the clinical diagnostics market.

4.     Defendant Beckman has sought to expand its presence in both markets by developing and launching copycat polymer dye products it calls "SuperNova Fluorescent Polymer Dyes" ("SuperNova Dyes").  Beckman attaches ("conjugates") its SuperNova Dyes to monoclonal antibodies that bind to specific proteins, and it sells these antibody-dye conjugates in the United States for use in both the RUO and clinical flow cytometry markets.  (Beckman's SuperNova Dyes and its dye-antibody conjugates are hereafter referred to collectively as the "Accused Products.")  Despite Beckman's knowledge of all or nearly all of the Asserted Patents, in March 2021, Beckman launched SuperNova v428, "the first dye of the series," that it markets as "equivalent" to BD's Brilliant Violet ("BV") 421, BD's first polymer dye product and the base dye for its Brilliant Violet product line.  Beckman also has launched two "tandem dyes," SuperNova v605 and SuperNova v786, which combine its SuperNova v428 polymer dye with a second fluorescent dye.  Beckman likewise is marketing these products in direct competition with BD, as "equivalent" to BV605 and BV786, respectively.

5.     On information and belief, Beckman is continuing to develop additional SuperNova Dyes, exploiting BD's pioneering technology to reap the rewards the patent system reserves for innovators.  On information and belief, Beckman plans to continue to launch additional infringing products in direct competition with BD unless its acts of infringement are prevented by court order.

## **Parties**

6.     Becton Dickinson is a New Jersey corporation having its principal place of business at 1 Becton Drive, Franklin Lakes, New Jersey.

7.      Sirigen is a California corporation having its principal place of business at 11085 North Torrey Pines Road, La Jolla, California.  Sirigen is a wholly-owned subsidiary of Sirigen II.

8.      Sirigen II is a United Kingdom private limited company having its principal place of business at 1030 Eskdale Road, Winnersh Triangle, Wokingham, Berkshire, England.  Sirigen II is a wholly-owned subsidiary of BD.

9.      On information and belief, Beckman is a Delaware corporation having its principal place of business at 250 South Kraemer Boulevard, Brea, California.

**Jurisdiction and Venue**

10.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

11.      This Court has personal jurisdiction over Beckman because Beckman is headquartered in Brea, California, regularly and continuously conducts business within California, including within this district, and has committed acts of infringement in California.

12.      Venue is proper in this district under 28 U.S.C. § 1400(b) at least because Beckman has a regular and established place of business in this district and has committed acts of infringement here.  Beckman maintains a facility in this district at 2470 Faraday Ave., Carlsbad, CA 92010. Beckman's operations in Carlsbad, CA are current.  The FDA's "Establishment Registration & Device Listing" database lists Beckman's Carlsbad, CA location as an active, registered establishment, current as of 2021.  On information and belief, Beckman employs approximately 200 employees at its Carlsbad, CA location.  In addition, as of the date of filing, Beckman is currently hiring for eight open positions in its Carlsbad, CA location.

13.      Beckman has purposefully directed infringing activities in this district, including marketing the use of and offering for sale its SuperNova dyes in this district, thereby directly or indirectly infringing the Asserted Patents. For

PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

example, on Thursday, June 10, 2021, Beckman held a webinar promoting its SuperNova dyes, which it described as "[a] must for lab managers who are developing multicolor flow cytometry panels and are interested in the latest innovations in flow cytometry."  In connection with this webinar, Beckman offered a "free sample or product demonstration of the SuperNova Dyes."  In addition, on the webinar, Beckman offered to send SuperNova Dyes to the attendees.  At least one participant attended the webinar from this district.

14.     Thus, jurisdiction and venue are proper in this district.

## **Background**

15.     In biological research, scientists identify cells and other molecular entities within a sample of biological material such as blood by detecting various biomarkers.  An effective way to detect such markers involves the use of fluorescent dyes (also called fluorochromes or fluorophores).  A fluorescent dye is a chemical compound, or a discrete unit within a chemical compound, that, when illuminated by light of a particular wavelength (that is, a particular color), can absorb that light to enter an excited state (i.e., excitation) and then emit light at a different wavelength (i.e., emission).  This emitted light is called fluorescence. Each fluorescent dye has a characteristic band of wavelengths for the light it can absorb, and a different band of wavelengths for the light it can emit.

16.     The use of fluorescent dyes allows scientists to label biological materials of interest in a variety of research and clinical applications of flow cytometry.  Flow cytometry is a technique used to determine whether the sample includes cells with particular proteins or biomarkers.  Flow cytometry instruments place the sample in a stream of fluid that enables the cells to flow through a detector single file.

17.     In flow cytometry, fluorescent dyes are chemically bound to specific antibodies, each of which can bind only to a specific protein.  If the target protein is present on the surface of the cell, the antibody binds to the protein, and the

PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

fluorescent dye attached to the antibody is detected when light (such as from a laser) is shone onto the sample.  If the target protein is not present on the cell, the antibody will not attach, and no fluorescence will be detected.  By attaching fluorescent dyes having different absorption and emission wavelengths to different antibodies, scientists can monitor multiple aspects of a biological system simultaneously by illuminating the sample with various wavelengths of light and observing what different wavelengths of light—i.e., what different colors of light—are emitted by the fluorescent dyes.

18.     Historically, most fluorescent dyes have been either small molecules or fluorescent proteins.  The Asserted Patents, however, are directed to a new class of fluorescent dyes, conjugated polymer dyes.  These polymers have an extended and repeated chain, or backbone, of repeat units capable of excitation and emission.  The repeat units are linked into the polymer chain in a way that allows their individual electronic systems to interact.  The resulting "$\pi$-conjugated system" of repeat units (hence, the name "conjugated polymers") allows energy to transfer up and down the polymer backbone.  As a result, conjugated polymer dyes (referred to herein more simply as "polymer dyes") are much better collectors and emitters of light, and thus much brighter fluorescent dyes.

19.     In 2003, researchers at the University of California Santa Barbara founded Sirigen and through their subsequent work developed water-soluble polymer dyes.  Sirigen's founders also found that the new dyes could transfer their energy very efficiently to traditional small molecule fluorescent dyes.  In these multi-chromophore systems, called "polymer tandem dyes," the polymer dye absorbs light at its characteristic absorption wavelengths, and the small molecule fluorescent dye, after receiving energy transfer from the polymer, then emits light at its characteristic wavelength.  This technological advance increased the combinations of excitation and emission wavelengths available for the use of researchers, and it took great advantage of the multi-fold increase in brightness that

polymer dyes enable.

20.    Sirigen's pioneering innovation has brought about a sea change in biological research, enabling scientists to use flow cytometry instruments more efficiently and reliably to detect very small cell populations within a sample. Before the advent of Sirigen's polymer dye technology, such cell populations would register only dimly in a flow cytometer's detection device.  The result of the patented inventions is to increase greatly the number and variety of such populations that can be studied and to improve the quality of data that researchers can obtain.

### The Asserted Patents

21.    On January 29, 2013, the United States Patent and Trademark Office ("USPTO") issued the '193 patent, entitled "Reagents for Directed Biomarker Signal Amplification."  Sirigen II owns by assignment the entire right, title, and interest in and to the '193 patent.  A true and correct copy of the '193 patent is attached as Exhibit A.

22.    On June 4, 2013, the USPTO issued the '613 patent, entitled "Reagents for Directed Biomarker Signal Amplification."  Sirigen II owns by assignment the entire right, title, and interest in and to the '613 patent.  A true and correct copy of the '613 patent is attached as Exhibit B.

23.    On November 5, 2013, the USPTO issued the '303 patent, entitled "Reagents for Directed Biomarker Signal Amplification."  Sirigen II owns by assignment the entire right, title, and interest in and to the '303 patent.  A true and correct copy of the '303 patent is attached as Exhibit C.

24.    On September 22, 2015, the USPTO issued the '869 patent, entitled "Reagents for Directed Biomarker Signal Amplification."  Sirigen II owns by assignment the entire right, title, and interest in and to the '869 patent.  A true and correct copy of the '869 patent is attached as Exhibit D.

///

25.     On January 17, 2017, the USPTO issued the '008 patent, entitled "Reagents for Directed Biomarker Signal Amplification."  Sirigen II owns by assignment the entire right, title, and interest in and to the '008 patent.  A true and correct copy of the '008 patent is attached as Exhibit E.

26.     On October 9, 2018, the USPTO issued the '838 patent, entitled "Reagents for Directed Biomarker Signal Amplification."  Sirigen II owns by assignment the entire right, title, and interest in and to the '838 patent.  A true and correct copy of the '838 patent is attached as Exhibit F.

27.     On May 14, 2019, the USPTO issued the '620 patent, entitled "Reagents for Directed Biomarker Signal Amplification."  Sirigen II owns by assignment the entire right, title, and interest in and to the '620 patent.  A true and correct copy of the '620 patent is attached as Exhibit G.

28.     On May 28, 2019, the USPTO issued the '648 patent, entitled "Reagents for Directed Biomarker Signal Amplification."  Sirigen II owns by assignment the entire right, title, and interest in and to the '648 patent.  A true and correct copy of the '648 patent is attached as Exhibit H.

29.     On July 30, 2019, the USPTO issued the '285 patent, entitled "Reagents for Directed Biomarker Signal Amplification."  Sirigen II owns by assignment the entire right, title, and interest in and to the '285 patent.  A true and correct copy of the '285 patent is attached as Exhibit I.

30.     On October 29, 2019, the USPTO issued the '989 patent, entitled "Reagents for Directed Biomarker Signal Amplification."  Sirigen II owns by assignment the entire right, title, and interest in and to the '989 patent.  A true and correct copy of the '989 patent is attached as Exhibit J.

31.     On May 5, 2020, the USPTO issued the '775 patent, entitled "Reagents for Directed Biomarker Signal Amplification."  Sirigen II owns by assignment the entire right, title, and interest in and to the '775 patent.  A true and correct copy of the '775 patent is attached as Exhibit K.

32.     On March 23, 2021, the USPTO issued the '417 patent, entitled "Reagents for Directed Biomarker Signal Amplification."  Sirigen II owns by assignment the entire right, title, and interest in and to the '417 patent.  A true and correct copy of the '417 patent is attached as Exhibit L.

33.     On March 30, 2021, the USPTO issued the '546 patent, entitled "Reagents for Directed Biomarker Signal Amplification."  Sirigen II owns by assignment the entire right, title, and interest in and to the '546 patent.  A true and correct copy of the '546 patent is attached as Exhibit M.

### The BD Horizon Brilliant™ Dyes

34.     BD is a leading global medical technology company, founded in 1897, that develops, manufactures, and sells medical devices, instrument systems and reagents.  Becton Dickinson is dedicated to improving people's health throughout the world.  Becton Dickinson serves healthcare institutions, life science researchers, clinical laboratories, pharmaceutical companies, and the general public.

35.     BD Biosciences is a business unit within BD.  BD Biosciences is a world leader in bringing innovative diagnostic and research tools to life scientists, clinical researchers, and laboratories.  BD Biosciences focuses on advancing the science associated with cellular analysis.  BD Biosciences makes flow cytometers for both clinical and research use.  BD's flow cytometry instrument include fluorescence-activated cell sorters and analyzers that can identify, count, and characterize cells to support cell analysis.  BD Biosciences also makes and sells reagents for those instruments that include antibodies bound to fluorescent dyes.

36.     All thirteen Asserted Patents—the '193, '613, '303, '869, '008, '838,'620, '648, '285, '989, '775, '417, and '546 patents—are licensed exclusively to BD in the field of cell-based flow cytometry immunoassays (antibody or protein based).

///

37.     BD's products include the BD Horizon Brilliant™ Violet dyes, a series of polymer dyes and polymer tandem dyes for use with a violet light laser. BD's products also include a second series of polymer dyes and polymer tandem dyes for use with an ultraviolet laser, called the BD Horizon Brilliant™ Ultraviolet dyes.  Building on the polymer dye technology developed at Sirigen, the BD Horizon Brilliant™ Violet and Brilliant™ Ultraviolet dyes are some of the brightest dyes in the industry, and allow the use of one laser to excite multiple different dyes that emit multiple colors of light, thereby offering the ability to detect multiple different biomarkers in one assay.

38.     Today, BD sells eight different polymer dyes in the BD Horizon Brilliant™ Violet (BV) family of products: two base BV dyes (BV421 and BV510) and six tandem BV dyes (BV605, BV650, BV711, BV750, BV785, and BV480). All of BD's BV dyes are activated by a 405-nm wavelength violet laser, and they can be used to detect a variety of different biomarkers and cell types.  Because they can be bound to antibodies having specificity for hundreds of different proteins marking different cells, these products vastly increase the number of biomarkers and cell types that can be detected using a single laser.

39.     BD also sells seven different polymer dyes for the ultraviolet laser. BD's BD Horizon Brilliant™ Ultraviolet Dyes (BUV) include one base dye (BUV395) and six tandem dyes (BUV496, BUV563, BUV661, BUV737, and BUV805).  Because these dyes absorb and emit light at distinct wavelengths along the entire ultraviolet and violet spectra, BD's extensive product offering allows scientists simultaneously to detect a larger number of proteins present in minute quantities than was previously possible, revolutionizing the field and enabling a deeper understanding of the cells being analyzed.

40.     In 2018, BD launched its BD Horizon Brilliant Violet product line for clinical diagnostic use.  These antibody-dye conjugates designed for use in clinical settings are referred to as "analyte specific reagents" ("ASRs").  ASRs are sold by

BD to clinical laboratories for use in diagnostic applications to identify and quantify the presence of pathogens or biomarkers of interest in biological specimens.  BD must comply with current good manufacturing practices (cGMP) for its ASR products, which requires BD to develop procedures related to production and process controls, implementing corrective and preventive action related to nonconformities and other errors, and the handling, storage, and distribution of finished products, among other requirements.  Among BD's customers of ASRs are clinical laboratories that use BD's reagents to create laboratory-developed tests ("LDTs") to detect the presence of specific proteins in cell populations.

41.     The launch of the Brilliant Violet ASRs into the clinical market provided a significant advance in patient-care, offering physicians highly sensitive tools for the diagnosis and monitoring of life-threatening diseases such as leukemia and lymphoma.  BD's innovative high brightness dyes allow for the detection of "minimal residual disease," *i.e.*, a condition whereby a small number of cancer cells remain in the body after treatment but do not produce symptoms and the presence of which is difficult to detect.  Detection of minimal residual disease can be life-altering; it can confirm remission or identify recurrence earlier than other tests previously available.

42.     Prior to Beckman's launch of its SuperNova dyes, BD was the sole source of ASR polymer dyes in the U.S. clinical market.

**Beckman and its Infringing SuperNova Dyes**

43.     Beckman is well aware of all or nearly all of the Asserted Patents, all of which derive from U.S. patent application No. 13/009,764 (the "'764 application"), which claims priority to two U.S. provisional applications.  The '764 application and PCT publication WO 2011 091086 ("PCT '086") are corresponding applications within this same patent family, both filed on January 19, 2011 and having the same priority claim.  On March 23, 2020, Beckman cited

PCT '086 and one of the Asserted Patents, the '193 patent, in the prosecution of its own patent application. Beckman also cited PCT '086 in its prosecution of a second patent application. On January 21, 2021, the USPTO rejected claims in one of Beckman's pending patent applications in light of BD's application that issued as another one of the Asserted Patents, the '613 patent.

44.     On February 26, 2021, BD brought to Beckman's attention three more of the Asserted Patents: the '648 patent, the '285 patent, and the '989 patent. The '989 patent lists on its face four other Asserted Patents, the '303 patent, the '869 patent, the '008 patent, and the '838 patent. At that same time, BD also brought to Beckman's attention BD's pending applications for, and the allowed claims of, the '417 patent and the '546 patent. The application for the '546 patent disclosed on its face another Asserted Patent, the '775 patent. Thus, Beckman has knowledge of the Asserted Patents.

45.     Nevertheless, on March 30, 2021, nearly 10 years after BD launched its BD Horizon Brilliant™ Violet (BV) product line in the research use only market, and with knowledge of the Asserted Patents, Beckman launched its line of flow cytometry reagents based on a polymer dye, which it calls "SuperNova Fluorescent Polymer Dyes" ("SuperNova Dyes"), including SuperNova v428, as well as tandem polymer dyes SuperNova v605 and SuperNova v786.

46.     Beckman currently sells and offers for sale four Accused Products comprising the polymer dye SuperNova v428 conjugated to antibodies; three of those four antibody-dye conjugates are identified on Beckman's website as ASR products for the U.S. clinical market. In addition, Beckman sells and offers for sale each of the three SuperNova Dyes, v428, v605, and v786, through its LUCID Custom Design Services, which offers to conjugate the SuperNova dyes to other specific antibodies at a customer's request.

47.     Beckman's SuperNova v428 product is a polymer dye having a backbone of π-conjugated repeat units. The repeat unit in Beckman's SuperNova

polymer dyes is a three-ring chemical structure known as dihydrophenanthrene ("DHP") having a chemical structure as shown schematically below:



The left and right rings in the structure of DHP possess the alternating pattern of single and double bonds that is characteristic of a conjugated system.  Each ring individually is a "phenyl" unit and these two rings together form a "biphenyl" unit. The third central ring, contains only single bonds and does not participate in the conjugated system.  It does, however, structurally constrain the biphenyl unit to prevent the two phenyls from rotating with respect to one another.  The DHP repeat units in Beckman's SuperNova polymer are linked to one another through the dashed bonds to the left and right.  The Beckman SuperNova polymer are made water-soluble by the inclusion of side groups containing oligomers of ethylene glycol, which are attached via the two dashed bonds at the top of the structure. Beckman's marketing materials explain that SuperNova v605 and SuperNova v786 include acceptor dyes are attached to the polymer.

48.    Beckman's SuperNova v428 polymer dye is a water-soluble conjugated polymer.  In a poster Beckman presented at the 2019 meeting of the International Society for Advancement of Cytometry ("CYTO"), co-authored by Beckman employees Arunkumar Easwaran, Massimiliano Tomasulo, and Sergei Gulnik, among others, Beckman depicted the preparation of SuperNova v428 by polymerizing dihydrophenanthrene monomers.

49.    SuperNova v605 and SuperNova v786 are "polymer tandem dyes, derived from the core SN v428."  On information and belief, SuperNova v605 and SuperNova v786 are water-soluble conjugated polymers based on DHP repeat

units, which have been modified with a side group containing a polyethylene glycol group and which also include acceptor dyes.

50.     Beckman's SuperNova dyes are chemically bound to antibodies designed to recognize a specific biomolecular structure/molecule of interest that is associated with a cell.  Beckman markets the SuperNova dyes for flow cytometry applications.

51.     Beckman's marketing materials promote its SuperNova polymer dye products as substitutions for dyes in the BD Horizon Brilliant™ Violet line. Beckman's marketing materials purport to provide direct comparisons between its SuperNova 428 and BD's BV421, its SuperNova v605 and BD's BV605, and SuperNova 786 and BD's BV786.

52.     Beckman has used these reagents itself, for example, in its internal research and development program, including the performance of flow cytometry that uses its SuperNova reagents.  On information and belief, at least some of these uses occurred within the United States.

53.     On information and belief, Beckman manufactures the Accused Products in France, imports the Accused Products into the United States, markets the Accused Products in the United States, offers the Accused Products for sale in the United States, and sells the Accused Products in the United States.

54.     In its March 30, 2021 press release, Beckman represented to its customers that "new conjugated antibodies will be introduced on a regular basis."

## Count I:  Infringement of U.S. Patent No. 8,362,193

55.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

56.     Beckman has known of the '193 patent since at least as early as March 23, 2020, when Beckman identified the '193 patent on an Information Disclosure Statement filed with the USPTO in U.S. Patent Application No. 16/711,131 which published as U.S. Patent Publication No. 2020 0190253.

57.  The '193 patent has one independent claim, claim 1, which recites:

A water soluble conjugated polymer having the structure of Formula:



wherein:

$G_1$ and $G_2$ are each independently selected from the group consisting of 1-9 having the structures:



and n is an integer from 1 to about 10,000.

PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

58.     On information and belief, each of the Accused Products comprises a water-soluble conjugated polymer having a backbone of between 1 and about 10,000 $\pi$-conjugated repeat units, comprising the structure of Formula recited in claim 1 of the '193 patent, either literally or under the doctrine of equivalents; and the conjugated polymers include end groups from the recited G1 and G2 end groups as a result of their synthesis via Suzuki coupling.

59.     Beckman has infringed, and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '193 patent by making, importing, using, offering for sale and selling the Accused Products

60.     Beckman has committed and continues to commit these acts of infringement without license or authorization.

61.     Beckman's infringement of the '193 patent is willful and deliberate. As of March 30, 2021, the date Beckman announced its launch of its SuperNova product line, Beckman knew or should have known that its making, importing, using, offering for sale, and selling the Accused Products constituted an unjustifiably high risk of infringement of the '193 patent.

62.     Plaintiffs have suffered damages as a result of Beckman's infringement of the '193 patent and will continue to suffer damages as long as those infringing activities continue.

63.     Plaintiffs have been and will continue to be irreparably harmed by Beckman's infringement of the '193 patent unless and until such infringement is enjoined by this Court.

**Count II:  Infringement of U.S. Patent No. 8,455,613**

64.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

65.     Beckman has known of the '613 patent since at least as early as January 21, 2021, when Beckman's U.S. Patent Application No. 16/092,180 was rejected as anticipated by U.S. Patent Publication No. 2011 0256549 which had

issued as the '613 patent on June 4, 2013.

66.    The '613 patent has one independent claim, claim 1, which recites:

A water soluble conjugated polymer having the structure of Formula:



wherein:

$G_1$ and $G_2$ are each independently selected from the group consisting of 1-9 having the structures:

1

    *—H

2

3

    *—Br

4

5

6



7



8



9

linker L$_1$ is



and is evenly or randomly distributed along the polymer main chain, wherein each R′ is independently a halogen, C$_1$-C$_{12}$ alkyl, or (C$_1$-C$_{12}$ alkyl)NH$_2$;

and n is an integer from 1 to about 10,000; and

a and c define the mol % of each unit within the structure which each

18

can be evenly or randomly repeated and where a is a mol % from about 75 to about 99% and c is mol % from about 1 to about 25%.

67.     On information and belief, each of the SuperNova v605 and v786 Accused Products comprises a water-soluble conjugated polymer having the structure of the formula recited in claim 1 of the '613 patent, either literally or under the doctrine of equivalents; the conjugated polymer has between 1 and 10,000 repeat units and includes end groups from the recited G1 and G2 end groups as a result of their synthesis via Suzuki coupling; the conjugated polymer comprises a linker functionalized with an alkyl or amine functional group; and the conjugated polymer comprises the units in the Formula recited in claim 1 in proportions such that a is a mol % from about 75 to about 99% and c is mol % from about 1 to about 25%.

68.     Beckman has infringed, and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '613 patent by making, importing, using, offering for sale and selling the SuperNova 605 and 786 Accused Products.

69.     Beckman has committed and continues to commit these acts of infringement without license or authorization.

70.     Beckman's infringement of the '613 patent is willful and deliberate. As of March 30, 2021, the date Beckman announced its launch of its SuperNova product line, Beckman knew or should have known that its making, importing, using,  offering for sale, and selling the SuperNova v605 and v786 Accused Products constituted an unjustifiably high risk of infringement of the '613 patent.

71.     Plaintiffs have suffered damages as a result of Beckman's infringement of the '613 patent and will continue to suffer damages as long as those infringing activities continue.

///

72.     Plaintiffs have been and will continue to be irreparably harmed by Beckman's infringement of the '613 patent unless and until such infringement is enjoined by this Court.

## Count III:  Infringement of U.S. Patent No. 8,575,303

73.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

74.     Beckman has known of the '303 patent since at least February 26, 2021, when BD brought the '989 patent to Beckman's attention.  The '303 patent is listed on the face of the '989 patent.

75.     Independent claim 1 of the '303 patent recites:

A water soluble conjugated polymer having the structure of Formula (Ia):

(Ia)



wherein:

each R is independently a non-ionic side group capable of imparting solubility in water in excess of 10 mg/mL;

MU is a polymer modifying unit or band gap modifying unit that is evenly or randomly distributed along the polymer main chain and is optionally substituted with one or more optionally substituted substituents selected from halogen, hydroxyl, $C_1$-$C_{12}$ alkyl, $C_2$-$C_{12}$ alkene, $C_2$-$C_{12}$ alkyne, $C_3$-$C_{12}$ cycloalkyl, $C_1$-$C_{12}$ haloalkyl, $C_1$-$C_{12}$ alkoxy, $C_2$-$C_{18}$ (hetero)aryloxy, $C_2$-$C_{18}$ (hetero)arylamino, $(CH_2)_{x'}(OCH_2CH_2)_{y'}OCH_3$ where each $x'$ is independently an integer from 0-20, $y'$ is independently an integer from 0 to 50, or a $C_2$-$C_{18}$ (hetero)aryl group;

each optional linker $L_1$ and $L_2$ are aryl or heteroaryl groups evenly or randomly distributed along the polymer main chain and are

PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

substituted with one or more pendant chains terminated with a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazines, hydrazids, hydrazones, azide, alkyne, aldehydes, thiols, and protected groups thereof for conjugation to another substrate, molecule or biomolecule;

$G_1$ and $G_2$ are each independently selected from hydrogen, halogen, alkyne, optionally substituted aryl, optionally substituted heteroaryl, halogen substituted aryl, boronic acid substituted aryl, boronic ester substituted aryl, boronic esters, boronic acids, optionally substituted fluorine and aryl or heteroaryl substituted with one or more pendant chains terminated with a functional group, molecule or biomolecule selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazines, hydrazids, hydrazones, azide, alkyne, aldehydes, thiols, and protected groups thereof for conjugation to another substrate, molecule or biomolecule;

wherein the polymer comprises at least 1 functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazines, hydrazids, hydrazones, azide, alkyne, aldehydes, and thiols within $G_1$, $G_2$, $L_1$ or $L_2$ that allows, for functional conjugation to another molecule, substrate or biomolecule;

n is an integer from 1 to about 10,000; and

a, b, c and d define the mol % of each unit within the structure which each can be evenly or randomly repeated and where a is a mol % from 10 to 100%, b is a mol % from 0 to 90%, and each c and d are mol % from 0 to 25%.

76.     On information and belief, each of the Accused Products comprises a water-soluble conjugated polymer having the structure of Formula (Ia) recited in claim 1 of the '303 patent, either literally or under the doctrine of equivalents; the water-soluble conjugated polymer comprises the recited non-ionic side group; the water-soluble conjugated polymer has between 1 and about 10,000 repeat units and includes end groups from the recited $G_1$ and $G_2$ end groups as a result of their synthesis via Suzuki coupling as well as the inclusion of functional groups for

antibody conjugation; the conjugated polymer comprises at least one recited functional group that allows for functional conjugation to another molecule, substrate or biomolecule; and the conjugated polymer comprises the units in Formula (Ia) recited in claim 1 in proportions such that a is from 10 to 100 mol %, b is 0 mol%, and c and d are from 0 to 25 mol%.

77.   Beckman has infringed, and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '303 patent by making, importing, using, offering for sale, and selling the Accused Products.  Beckman has committed and continues to commit these acts of infringement without license or authorization.

78.   Beckman's infringement of the '303 patent is willful and deliberate. As of March 30, 2021, the date Beckman announced its launch of its SuperNova product line, Beckman knew or should have known that its making, importing, using, offering for sale, and selling the Accused Products constituted an unjustifiably high risk of infringement of the '303 patent.

79.   Plaintiffs have suffered damages as a result of Beckman's infringement of the '303 patent and will continue to suffer damages as long as those infringing activities continue.

80.   Plaintiffs have been and will continue to be irreparably harmed by Beckman's infringement of the '303 patent unless and until such infringement is enjoined by this Court.

## Count IV:  Infringement of U.S. Patent No. 9,139,869

81.   Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

82.   Beckman has known of the '869 patent since at least February 26, 2021, when BD brought the '989 patent to Beckman's attention.  The '869 patent is listed on the face of the '989 patent.

83.   Independent claim 1 of the '869 patent recites:

An assay method for detecting a target biomolecule in a sample comprising:

providing a sample that is suspected of containing a target biomolecule;

providing a conjugated polymer complex comprising sensor biomolecule conjugated to a water soluble conjugated polymer having the structure of Formula (Ia):



wherein:

each R is independently a side group capable of imparting solubility in water;

MU is a polymer modifying unit or band gap modifying unit that is evenly or randomly distributed along the polymer main chain and is optionally substituted with one or more optionally substituted substituents selected from halogen, hydroxyl, $C_1$-$C_{12}$ alkyl, $C_2$-$C_{12}$ alkene, $C_2$-$C_{12}$ alkyne, $C_3$-$C_{12}$ cycloalkyl, $C_1$-$C_{12}$ haloalkyl, $C_1$-$C_{12}$ alkoxy, $C_2$-$C_{18}$ (hetero)aryloxy, $C_2$-$C_{18}$ (hetero)arylamino, $(CH_2)_{x'}(OCH_2CH_2)_y OCH_3$ where each $x'$ is independently an integer from 0-20, $y'$ is independently an integer from 0 to 50, or a $C_2$-$C_{18}$ (hetero)aryl group;

each optional linker $L_1$ and $L_2$ are aryl or hetroaryl groups evenly or randomly distributed along the polymer main chain and are substituted with one or more pendant chains terminated with a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazines, hydrazids, hydrazones, azide, alkyne, aldehydes, thiols, and protected groups thereof for conjugation to another substrate, molecule or biomolecule;

$G_1$ and $G_2$ are each independently selected from hydrogen, halogen, alkyne, optionally substituted aryl, optionally substituted heteroaryl, halogen substituted aryl, boronic acid substituted aryl, boronic ester substituted aryl, boronic esters, boronic acids, optionally substituted fluorine and aryl or hetroaryl

substituted with one or more pendant chains terminated with a functional group, molecule or biomolecule selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazines, hydrazids, hydrazones, azide, alkyne, aldehydes, thiols, and protected groups thereof for conjugation to another substrate, molecule or biomolecule;

wherein the polymer comprises at least 1 functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazines, hydrazids, hydrazones, azide, alkyne, aldehydes, and thiols within $G_1$, $G_2$, $L_1$ or $L_2$ that allows, for functional conjugation to another molecule, substrate or biomolecule;

n is an integer from 1 to about 10,000; and

a, b, c and d define the mol % of each unit within the structure which each can be evenly or randomly repeated and where a is a mol % from 10 to 100%, b is a mol % from 0 to 90%, and each c and d are mol % from 0 to 25%;

wherein the sensor biomolecule is capable of interacting with the target biomolecule or a target-associated biomolecule and wherein the polymer is optionally conjugated to a signaling chromophore;

contacting the sample with the sensor biomolecule and the conjugated polymer in a solution under conditions in which the sensor biomolecule can bind to the target biomolecule or a target-associated biomolecule if present;

applying a light source to the sample that can excite the polymer; and detecting whether light is emitted from the conjugated polymer complex.

84.   Beckman has infringed, and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '869 patent by using the Accused Products.  Beckman has performed the recited method for detecting a target biomolecule in a sample comprising contacting a sample with its Accused Products.

///

85.     On information and belief, each of the conjugated polymers of the Accused Products comprises a conjugated polymer complex comprising a sensor biomolecule, *i.e.*, an antibody, conjugated to a water-soluble conjugated polymer having the structure of Formula (Ia) recited in claim 1 of the '869 patent, either literally or under the doctrine of equivalents; the water soluble conjugated polymer comprises a side group capable of imparting solubility in water; the water-soluble conjugated polymer has between 1 and about 10,000 repeat units and includes end groups from the recited $G_1$ and $G_2$ end groups as a result of its synthesis via Suzuki coupling as well as the inclusion of functional groups for antibody conjugation; the conjugated polymer comprises at least one recited functional group that allows for functional conjugation to another molecule, substrate or biomolecule; and the conjugated polymer comprises the units in Formula (Ia) recited in claim 1 in proportions such that a is from 10 to 100 mol %, b is 0 mol%, and c and d are from 0 to 25 mol%.  Each of the sensor biomolecules of the Accused Products is an antibody capable of interacting with the target biomolecule.  Beckman has used the Accused Products to detect cells expressing certain receptors in flow cytometry where a light source is applied to the sample that can excite the polymer of the Accused Product to detect whether light is emitted from the conjugated polymer complex.

86.     Beckman's marketing and promotional materials for the Accused Products instruct their users to use the Accused Products in flow cytometry methods, in which the user contacts a sample suspected of containing a target molecule with the conjugated polymer complex recited in claim 1 under conditions in which the sensor biomolecule can bind to the target biomolecule or a target-associated biomolecule if present and then applies a light source to the sample that can excite the polymer and detects whether light is emitted from the conjugated polymer complex, as recited in claim 1 of the '869 patent.

///

PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

87.    Beckman has induced, and continues to actively induce, infringement, of at least claim 1 of the '869 patent.  For instance, Beckman instructs, directs and encourages customers on the use of the Accused Products with the knowledge that such use infringes the '869 patent and intending others to perform the infringing activities.  On information and belief, such conduct by Beckman was intended to and actually resulted in direct infringement, either literally or under the doctrine of equivalents, by its customers.

88.    Beckman has contributorily infringed and continues to contributorily infringe at least claim 1 of the '869 patent by selling and offering for sale in the United States, and importing into the United States, each of the Accused Products, each of which is a material part of the invention of the '869 patent, knowing that the Accused Products are especially made or adapted to infringe the '869 patent, and are not a staple article or commodity or commerce suitable for substantial non-infringing use.  On information and belief, such conduct by Beckman was intended to and actually resulted in direct infringement, either literally or under the doctrine of equivalents, by its customers.

89.    Beckman has committed and continues to commit these acts of infringement without license or authorization.

90.    Beckman's infringement of the '869 patent is willful and deliberate. As of March 30, 2021, the date Beckman announced its launch of its SuperNova product line, Beckman knew or should have known that its making, importing, using, offering for sale, and selling the Accused Products constituted an unjustifiably high risk of infringement of the '869 patent.

91.    Plaintiffs have suffered damages as a result of Beckman's direct and indirect infringement of the '869 patent and will continue to suffer damages as long as those infringing activities continue.

92.    Plaintiffs have been and will continue to be irreparably harmed by Beckman's direct and indirect infringement of the '869 patent unless and until such

PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

1    infringement is enjoined by this Court.

2              **Count V:  Infringement of U.S. Patent No. 9,547,008**

3         93.    Plaintiffs repeat and reallege the allegations set forth above as though

4    fully set forth herein.

5         94.    Beckman has known of the '008 patent since at least February 26,

6    2021, when BD brought the '989 patent to Beckman's attention.  The '008 patent

7    is listed on the face of the '989 patent.

8         95.    The '008 patent has one independent claim, claim 1, which recites:

9         A water soluble conjugated polymer having the structure of Formula

10             (Ia):

11                                                                    (Ia)

12

13   

14

15        wherein:

16        each R is independently a side group capable of imparting solubility
              in water;

17
18        MU is a polymer modifying unit or band gap modifying unit that is
              evenly or randomly distributed along the polymer main chain
19             and is optionally substituted with one or more optionally
              substituted substituents selected from halogen, hydroxyl, $C_1$-
20             $C_{12}$alkyl, $C_2$-$C_{12}$ alkene, $C_2$-$C_{12}$ alkyne, $C_3$-$C_{12}$ cycloalkyl, $C_1$-
              $C_{12}$haloalkyl, $C_1$-$C_{12}$ alkoxy, $C_2$-$C_{18}$(hetero)aryloxy, $C_2$-
21             $C_{18}$(hetero)arylamino, $(CH_2)_{x'}(OCH_2CH_2)_{y'}OCH_3$ where each $x'$
              is independently an integer from 0-20, $y'$ is independently an
22             integer from 0 to 50, or a $C_2$-$C_{18}$(hetero)aryl group;

23        optional linkers $L_1$ and $L_2$ are each independently an aryl or a
              heteroaryl group evenly or randomly distributed along the
24             polymer main chain and are substituted with one or more
              pendant chains terminated with: i) a functional group selected
25             from amine, carbamate, carboxylic acid, carboxylate,
              maleimide, activated esters, N-hydroxysuccinimidyl,
27             hydrazines, hydrazide, hydrazones, azide, alkyne, aldehydes,

28

thiols, and protected groups thereof for conjugation to a molecule or biomolecule; or ii) a conjugated organic dye or biomolecule;

$G_1$ and $G_2$ are each independently selected from hydrogen, halogen, alkyne, optionally substituted aryl, optionally substituted heteroaryl, halogen substituted aryl, boronic acid substituted aryl, boronic ester substituted aryl, boronic ester, boronic acid, optionally substituted fluorene and aryl or heteroaryl substituted with one or more pendant chains terminated with: i) a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazines, hydrazids, hydrazones, azide, alkyne, aldehydes, thiols, and protected groups thereof for conjugation to a molecule or biomolecule; or ii) a conjugated organic dye or biomolecule;

wherein the polymer comprises at least 1 functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazines, hydrazids, hydrazones, azide, alkyne, aldehydes, and thiols within $G_1$, $G_2$, $L_1$ or $L_2$, or a conjugated organic dye or biomolecule;

n is an integer from 1 to about 10,000; and

a, b, c and d define the mol % of each unit within the structure which each can be evenly or randomly repeated and where a is a mol % from 10 to 100%, b is a mol % from 0 to 90%, and each c and d are mol % from 0 to 25%.

96.     On information and belief, each of the Accused Products comprises a water-soluble conjugated polymer having the structure of Formula (Ia) recited in claim 1 of the '008 patent, either literally or under the doctrine of equivalents; the water-soluble conjugated polymer comprises a side group capable of imparting solubility in water; the water-soluble conjugated polymer has between 1 and about 10,000 repeat units and includes end groups from the recited $G_1$ and $G_2$ end groups as a result of its synthesis via Suzuki coupling as well as the inclusion of functional groups for antibody conjugation; the conjugated polymer comprises at least one recited functional group that allows for functional conjugation to another molecule,

substrate or biomolecule; and the conjugated polymer comprises the units in Formula (Ia) recited in claim 1 in proportions such that a is from 10 to 100 mol %, b is 0 mol%, and c and d are from  0 to 25 mol%.

97.     Beckman has infringed, and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '008 patent by making, importing, using, offering for sale, and selling the Accused Products.

98.     Beckman has committed and continues to commit these acts of infringement without license or authorization.

99.     Beckman's infringement of the '008 patent is willful and deliberate. As of March 30, 2021, the date Beckman announced its launch of its SuperNova product line, Beckman knew or should have known that its making, importing, using, offering for sale, and selling the Accused Products constituted an unjustifiably high risk of infringement of the '008 patent.

100.    Plaintiffs have suffered damages as a result of Beckman's infringement of the '008 patent and will continue to suffer damages as long as those infringing activities continue.

101.    Plaintiffs have been and will continue to be irreparably harmed by Beckman's infringement of the '008 patent unless and until such infringement is enjoined by this Court.

## Count VI: Infringement of U.S. Patent No. 10,094,838

102.    Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

103.    Beckman has known of the '838 patent since at least February 26, 2021, when BD brought the '989 patent to Beckman's attention.  The '838 patent is listed on the face of the '989 patent.

104.    The '838 patent has one independent claim, claim 1, which recites:

A method of determining whether a target is present in a sample, the method comprising:

contacting the sample with a conjugated polymer complex comprising a sensor for the target conjugated to a water soluble conjugated polymer having the structure of Formula (Ia):

(Ia)



wherein:

each R is independently a side group capable of imparting solubility in water;

MU is a polymer modifying unit or band gap modifying unit that is evenly or randomly distributed along the polymer main chain and is optionally substituted with one or more optionally substituted substituents selected from halogen, hydroxyl, $C_1$-$C_{12}$ alkyl, $C_2$-$C_{12}$ alkene, $C_2$-$C_{12}$ alkyne, $C_3$-$C_{12}$ cycloalkyl, $C_1$-$C_{12}$ haloalkyl, $C_1$-$C_{12}$ alkoxy, $C_2$-$C_{18}$ (hetero)aryloxy, $C_2$-$C_{18}$ (hetero)arylamino, $(CH_2)_{x'}(OCH_2CH_2)_{y'}OCH_3$ where each $x'$ is independently an integer from 0-20, $y'$ is independently an integer from 0 to 50, or a $C_2$-$C_{18}$ (hetero)aryl group;

optional linker $L_1$ and $L_2$ are each independently aryl or heteroaryl groups evenly or randomly distributed along the polymer main chain and are substituted with one or more pendant chains terminated with: i) a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazines, hydrazids, hydrazones, azide, alkyne, aldehydes, thiols, and protected groups thereof for conjugation to another substrate, molecule or biomolecule; or ii) a conjugated organic dye or biomolecule

$G_1$ and $G_2$ are each independently selected from hydrogen, halogen, alkyne, optionally substituted aryl, optionally substituted heteroaryl, halogen substituted aryl, boronic acid substituted aryl, boronic ester substituted aryl, boronic esters, boronic acid, optionally substituted fluorene and aryl or heteroaryl substituted with one or more pendant chains terminated with: i) a functional group selected from amine, carbamate, carboxylic

PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazines, hydrazids, hydrazones, azide, alkyne, aldehydes, thiols, and protected groups thereof for conjugation to another substrate, molecule or biomolecule; or ii) a sensor for the target conjugated to a water soluble conjugated polymer having the structure of Formula (Ia):

wherein the polymer comprises at least 1 functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazines, hydrazids, hydrazones, azide, alkyne, aldehydes, and thiols within $G_1$, $G_2$, $L_1$ or $L_2$ or a conjugated organic dye or biomolecule;

n is an integer from 1 to about 10,000; and

a, b, c and d define the mol % of each unit within the structure which each can be evenly or randomly repeated and where a is a mol % from 10 to 100%, b is a mol % from 0 to 90%, and each c and d are mol % from 0 to 25%.

105. Beckman has infringed, and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '838 patent by using the Accused Products. Beckman has performed the recited method for determining whether a target molecule is present in a sample, the method comprising contacting a sample with one of its Accused Products.

106. On information and belief, each of the conjugated polymers of the Accused Products comprises a conjugated polymer complex comprising a sensor for the target conjugated to a water-soluble conjugated polymer having the structure of Formula (Ia) recited in claim 1 of the '838 patent, either literally or under the doctrine of equivalents; the water-soluble conjugated polymer comprises a side group capable of imparting solubility in water; the water-soluble conjugated polymer has between 1 and about 10,000 repeat units and includes end groups from the recited $G_1$ and $G_2$ end groups as a result of its synthesis via Suzuki coupling as well as the inclusion of functional groups for antibody conjugation; the conjugated polymer comprises at least one recited functional group that allows for

functional conjugation to another molecule, substrate or biomolecule; and the conjugated polymer comprises the units in Formula (Ia) recited in claim 1 in proportions such that a is a mol % from 10 to 100%, b is a mol % from 0 to 90%, and each c and d are mol % from 0 to 25%.  The sensor of the Accused Products is an antibody capable of interacting with a target biomolecule.  Beckman has used the Accused Products to detect whether a target is present in a sample.

107.   Beckman's marketing and promotional materials for the Accused Products instruct their users to use the Accused Products in flow cytometry methods in which the user determines whether a target is present in a sample by contacting the sample with one of its Accused Products as recited in claim 1 of the '838 patent.

108.   Beckman has induced, and continues to actively induce, infringement, of at least claim 1 of the '838 patent.  For instance, Beckman instructs, directs and encourages customers on the use of the Accused Products with the knowledge that such use infringes the '838 patent and intending others to perform the infringing activities.  On information and belief, such conduct by Beckman was intended to and actually resulted in direct infringement, either literally or under the doctrine of equivalents, by its customers.

109.   Beckman has contributorily infringed and continues to contributorily infringe at least claim 1 of the '838 patent by selling and offering for sale in the United States, and importing into the United States, each of the Accused Products, each of which is a material part of the invention of the '838 patent, knowing that the Accused Products are especially made or adapted to infringe the '838 patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use.  On information and belief, such conduct by Beckman was intended to and actually resulted in direct infringement, either literally or under the doctrine of equivalents, by its customers.

///

110.   Beckman has committed and continues to commit these acts of infringement without license or authorization.

111.   Beckman's infringement of the '838 patent is willful and deliberate. As of March 30, 2021, the date Beckman announced its launch of its SuperNova product line, Beckman knew or should have known that its making, importing, using, offering for sale, and selling the Accused Products constituted an unjustifiably high risk of infringement of the '838 patent.

112.   Plaintiffs have suffered damages as a result of Beckman's direct and indirect infringement of the '838 patent and will continue to suffer damages as long as those infringing activities continue.

113.   Plaintiffs have been and will continue to be irreparably harmed by Beckman's direct and indirect infringement of the '838 patent unless and until such infringement is enjoined by this Court.

**Count VII: Infringement of U.S. Patent No. 10,288,620**

114.   Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

115.   Since at least March 23, 2020, if not earlier, Beckman has known or should have known of the '620 patent, which claims priority to U.S. patent application No. 13/009,764 (the "'764 application") as well as two U.S. provisional application.  On March 23, 2020, Beckman cited the '193 patent, which claims priority to the '764 application, and PCT '086 in the prosecution of its own patent application.  The '764 application and PCT '086 are corresponding applications within the same family, both filed on January 19, 2011 and having the same priority claim.  Beckman also cited PCT '086 `in its prosecution of a second patent application.

116.   The '620 patent has one independent claim, claim 1, which recites:

A polymer-biomolecule conjugate comprising:

a water soluble conjugated polymer; and

a biomolecule covalently linked to the water soluble conjugated polymer;

wherein the water soluble conjugated polymer is of the formula:



each R is independently a non-ionic side group capable of imparting solubility in water;

MU is a polymer modifying unit or band gap modifying unit that is evenly or randomly distributed along the polymer main chain and is optionally substituted with one or more optionally substituted substituents selected from halogen, hydroxyl, $C_1$-$C_{12}$ alkyl, $C_2$-$C_{12}$ alkene, $C_2$-$C_{12}$ alkyne, $C_3$-$C_{12}$ cycloalkyl, $C_1$-$C_{12}$ haloalkyl, $C_1$-$C_{12}$ alkoxy, $C_2$-$C_{18}$(hetero)aryloxy, $C_2$-$C_{18}$ (hetero)arylamino, a $C_2$-$C_{18}$ (hetero)aryl group and $(CH_2)_{x'}(OCH_2CH_2)_{y'}OCH_3$ where $x'$ is independently an integer from 0-20 and $y'$ is independently an integer from 0 to 50;

$L_1$ and $L_2$ are linkers each independently an aryl or a heteroaryl group evenly or randomly distributed along the polymer main chain and are substituted with one or more pendant chains terminated with: i) a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazines, hydrazide, hydrazones, azide, alkyne, aldehydes, thiols, and protected groups thereof for conjugation to a molecule or biomolecule; or ii) a conjugated organic dye or the covalently linked biomolecule;

$G_1$ and $G_2$ are each independently selected from hydrogen, halogen, alkyne, optionally substituted aryl, optionally substituted heteroaryl, halogen substituted aryl, boronic acid substituted

aryl, boronic ester substituted aryl, boronic ester, boronic acid, optionally substituted fluorene and aryl or heteroaryl substituted with one or more pendant chains terminated with: i) a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazines, hydrazids, hydrazones, azide, alkyne, aldehydes, thiols, and protected groups thereof for conjugation to a molecule or biomolecule; or ii) a conjugated organic dye or biomolecule;

n is an integer from 1 to about 10,000; and

a, b, c and d define the mol % of each unit within the structure which each can be evenly or randomly repeated and where a is a mol % from 10 to 100%, b is a mol % from 0 to 90%, and each c and d are mol % from 0 to 25%.

117.   On information and belief, each of the Accused Products comprises a polymer-biomolecule complex comprising an antibody covalently linked to a water-soluble conjugated polymer having the structure of the formula recited in claim 1 of the '620 patent, either literally or under the doctrine of equivalents; the water-soluble conjugated polymer includes a chemical functionality corresponding to the "R" group that is a non-ionic side group capable of imparting solubility in water; the water-soluble conjugated polymer has between 1 and about 10,000 repeat units and includes end groups from the recited $G_1$ and $G_2$ end groups as a result of its synthesis via Suzuki coupling as well as the inclusion of functional groups for antibody conjugation, or include a conjugated biomolecule such as an antibody; and the conjugated polymer comprises the units in the formula recited in claim 1 in proportions such that a is a mol % from 10 to 100%, b is a mol % from 0 to 90%, and each c and d are mol % from 0 to 25%.

118.   Beckman has infringed, and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '620 patent by making, importing, using, offering for sale, and selling the Accused Products.  Beckman has committed and continues to commit these acts of infringement without license

or authorization.

119.   Beckman's infringement of the '620 patent is willful and deliberate. As of March 30, 2021, the date Beckman announced its launch of its SuperNova product line, Beckman knew or should have known that its making, importing, using, offering for sale, and selling the Accused Products constituted an unjustifiably high risk of infringement of the '620 patent.

120.   Plaintiffs have suffered damages as a result of Beckman's infringement of the '620 patent and will continue to suffer damages as long as those infringing activities continue.

121.   Plaintiffs have been and will continue to be irreparably harmed by Beckman's infringement of the '620 patent unless and until such infringement is enjoined by this Court.

### Count VIII: Infringement of U.S. Patent No. 10,302,648

122.   Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

123.   Beckman has known of the '648 patent since at least February 26, 2021, when BD brought the '648 patent to Beckman's attention.

124.   The '648 patent has one independent claim, claim 1, which recites:

A water soluble conjugated polymer having the structure of the formula:

$$G_2 - \left[ \left( Ar \right)_a - \left( Mu \right)_b - \left( L_1 \right)_c - \left( L_2 \right)_d \right]_n - G_1$$

wherein:

Ar is an aryl or heteroaryl unit substituted with a non-ionic side group capable of imparting solubility in water;

MU is a polymer modifying unit or band gap modifying unit that is evenly or randomly distributed along the polymer main chain and is optionally substituted with one or more optionally substituted substituents selected from halogen, hydroxyl, $C_1$-

$C_{12}$ alkyl, $C_2$-$C_{12}$ alkene, $C_2$-$C_{12}$ alkyne, $C_3$-$C_{12}$ cycloalkyl, $C_1$-$C_{12}$ haloalkyl, $C_1$-$C_{12}$ alkoxy, $C_2$-$C_{18}$ (hetero)aryloxy, $C_2$-$C_{18}$ (hetero)arylamino, a $C_2$-$C_{18}$ (hetero)aryl group and $(CH_2)_{x'}(OCH_2CH_2)_{y'}OCH_3$ where x′ is independently an integer from 0-20 and y′ is independently an integer from 0 to 50;

optional linkers $L_1$ and $L_2$ are each independently an aryl or a heteroaryl group evenly or randomly distributed along the polymer main chain and are substituted with one or more pendant chains terminated with: i) a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated ester, N-hydroxysuccinimidyl, hydrazine, hydrazide, hydrazone, azide, alkyne, aldehyde, thiol, and protected groups thereof for conjugation to a molecule or biomolecule; or ii) a conjugated organic dye or biomolecule;

$G_1$ and $G_2$ are each independently selected from hydrogen, halogen, alkyne, optionally substituted aryl, optionally substituted heteroaryl, halogen substituted aryl, boronic acid substituted aryl, boronic ester substituted aryl, boronic ester, boronic acid, optionally substituted fluorene and aryl or heteroaryl substituted with one or more pendant chains terminated with: i) a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazine, hydrazide, hydrazone, azide, alkyne, aldehyde, thiol, and protected groups thereof for conjugation to a molecule or biomolecule; or ii) a conjugated organic dye or biomolecule;

wherein the polymer comprises at least 1 functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated ester, N-hydroxysuccinimidyl, hydrazines, hydrazide, hydrazone, azide, alkyne, aldehyde, and thiol within $G_1$, $G_2$, $L_1$ or $L_2$, or a conjugated organic dye or biomolecule;

n is an integer from 1 to about 10,000; and

a, b, c and d define the mol % of each unit within the structure which each can be evenly or randomly repeated and where a is a mol % from 10 to 100%, b is a mol % from 0 to 90%, and each c and d are mol % from 0 to 25%.

125.   On information and belief, each of the Accused Products comprises a water-soluble conjugated polymer having the structure of the formula recited in

claim 1 of the '648 patent, either literally or under the doctrine of equivalents; the water-soluble conjugated polymer comprises an Ar group that is an aryl unit substituted with a non-ionic side group capable of imparting solubility in water; the water-soluble conjugated polymer has between 1 and about 10,000 repeat units and includes end groups from the recited $G_1$ and $G_2$ end groups as a result of its synthesis via Suzuki coupling as well as the inclusion of functional groups for antibody conjugation; the conjugated polymer comprises at least one recited functional group that allows for functional conjugation to another molecule, substrate or biomolecule; and the conjugated polymer comprises the units in the formula recited in claim 1 in proportions such that a is from 10 to 100 mol %, b is from 0 to 90 mol%, and c and d are from 0 to 25 mol%.

126. Beckman has infringed, and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '648 patent by making, importing, using, offering for sale, and selling the Accused Products. Beckman has committed and continues to commit these acts of infringement without license or authorization.

127. Beckman's infringement of the '648 patent is willful and deliberate. As of March 30, 2021, the date Beckman announced its launch of its SuperNova product line, Beckman knew or should have known that its making, importing, using, offering for sale, and selling the Accused Products constituted an unjustifiably high risk of infringement of the '620 patent.

128. Plaintiffs have suffered damages as a result of Beckman's infringement of the '648 patent and will continue to suffer damages as long as those infringing activities continue.

129. Plaintiffs have been and will continue to be irreparably harmed by Beckman's infringement of the '648 patent unless and until such infringement is enjoined by this Court.

///

## Count IX: Infringement of U.S. Patent No. 10,365,285

130.   Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

131.   Beckman has known of the '285 patent since at least February 26, 2021, when BD brought the '285 patent to Beckman's attention.

132.   The '285 patent has one independent claim, claim 1, which recites:

A method of determining whether a target is present in a sample, the method comprising:

contacting the sample with a conjugated polymer complex comprising a sensor for the target conjugated to a water soluble conjugated polymer having the structure of the formula:

$$G_2 - \left[ \left( Ar \right)_a - \left( Mu \right)_b - \left( L_1 \right)_c - \left( L_2 \right)_d \right]_n - G_1$$

wherein:

Ar is an aryl or heteroaryl unit substituted with a non-ionic side group capable of imparting solubility in water;

MU is a polymer modifying unit or band gap modifying unit that is evenly or randomly distributed along the polymer main chain and is optionally substituted with one or more optionally substituted substituents selected from halogen, hydroxyl, $C_1$-$C_{12}$ alkyl, $C_2$-$C_{12}$ alkene, $C_2$-$C_{12}$ alkyne, $C_3$-$C_{12}$ cycloalkyl, $C_1$-$C_{12}$ haloalkyl, $C_1$-$C_{12}$ alkoxy, $C_2$-$C_{18}$ (hetero)aryloxy, $C_2$-$C_{18}$ (hetero)arylamino, a $C_2$-$C_{18}$ (hetero)aryl group and $(CH_2)_{x'}(OCH_2CH_2)_{y'}OCH_3$ where $x'$ is independently an integer from 0-20 and $y'$ is independently an integer from 0 to 50;

optional linkers $L_1$ and $L_2$ are each independently an aryl or heteroaryl group evenly or randomly distributed along the polymer main chain and are substituted with one or more pendant chains terminated with: i) a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated ester, N-hydroxysuccinimidyl, hydrazine, hydrazide, hydrazone, azide, alkyne, aldehyde, thiol, and

PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

protected groups thereof for conjugation to a molecule or biomolecule; or ii) a conjugated organic dye or biomolecule;

$G_1$ and $G_2$ are each independently selected from hydrogen, halogen, alkyne, optionally substituted aryl, optionally substituted heteroaryl, halogen substituted aryl, boronic acid substituted aryl, boronic ester substituted aryl, boronic ester, boronic acid, optionally substituted fluorene and aryl or heteroaryl substituted with one or more pendant chains terminated with: i) a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazine, hydrazide, hydrazone, azide, alkyne, aldehyde, thiol, and protected groups thereof for conjugation to a molecule or biomolecule; or ii) a conjugated organic dye or biomolecule;

wherein the polymer comprises at least 1 functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated ester, N-hydroxysuccinimidyl, hydrazines, hydrazide, hydrazone, azide, alkyne, aldehyde, and thiol within $G_1$, $G_2$, $L_1$ or $L_2$, or a conjugated organic dye or biomolecule;

n is an integer from 1 to about 10,000; and

a, b, c and d define the mol % of each unit within the structure which each can be evenly or randomly repeated and where a is a mol % from 10 to 100%, b is a mol % from 0 to 90%, and each c and d are mol % from 0 to 25%.

133.   Beckman has infringed, and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '285 patent by using the Accused Products.  Beckman has performed the recited method for determining whether a target is present in a sample, the method comprising contacting a sample with its Accused Products.  On information and belief, each of the Accused Products comprises a conjugated polymer complex comprising a sensor for the target conjugated to a water-soluble conjugated polymer having the structure of formula recited in claim 1 of the '285 patent, either literally or under the doctrine of equivalents; the water-soluble conjugated polymer comprises an Ar group that is an aryl unit substituted with a non-ionic side group capable of imparting solubility

in water; the water-soluble conjugated polymer has between 1 and about 10,000 repeat units and includes end groups from the recited $G_1$ and $G_2$ end groups as a result of its synthesis via Suzuki coupling as well as the inclusion of functional groups for antibody conjugation; the conjugated polymer comprises at least one recited functional group that allows for functional conjugation to another molecule, substrate or biomolecule; and the conjugated polymer comprises the units in the formula recited in claim 1 in proportions such that a is from 10 to 100 mol %, b is from 0 to 90 mol%, and c and d are from 0 to 25 mol%.

134. Beckman's marketing and promotional materials for the Accused Products instruct their users to use the Accused Products in flow cytometry methods in which the user determines whether a target is present in a sample by contacting the sample with one of its Accused Products which are conjugated polymer complexes as recited in claim 1 of the '285 patent.

135. Beckman has induced, and continues to actively induce, infringement, of at least claim 1 of the '285 patent. For instance, Beckman instructs, directs and encourages customers on the use of the Accused Products with the knowledge that such use infringes the '285 patent and intending others to perform the infringing activities. On information and belief, such conduct by Beckman was intended to and actually resulted in direct infringement, either literally or under the doctrine of equivalents, by its customers.

136. Beckman has contributorily infringed and continues to contributorily infringe at least claim 1 of the '285 patent by selling and offering for sale in the United States, and importing into the United States, each of the Accused Products, each of which is a material part of the invention of the '285 patent, knowing that the Accused Products are especially made or adapted to infringe the '285 patent, and are not a staple article or commodity of commerce suitable for substantial non-infringing use. On information and belief, such conduct by Beckman was intended to and actually resulted in direct infringement, either literally or under the doctrine

of equivalents, by its customers.

137.   Beckman has committed and continues to commit these acts of infringement without license or authorization.

138.   Beckman's infringement of the '285 patent is willful and deliberate. As of March 30, 2021, the date Beckman announced its launch of its SuperNova product line, Beckman knew or should have known that its making, importing, using, offering for sale, and selling the Accused Products constituted an unjustifiably high risk of infringement of the '285 patent.

139.   Plaintiffs have suffered damages as a result of Beckman's direct and indirect infringement of the '285 patent and will continue to suffer damages as long as those infringing activities continue.

140.   Plaintiffs have been and will continue to be irreparably harmed by Beckman's direct and indirect infringement of the '285 patent unless and until such infringement is enjoined by this Court.

## Count X: Infringement of U.S. Patent No. 10,458,989

141.   Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

142.   Beckman has known of the '989 patent since at least February 26, 2021, when BD brought the '989 patent to Beckman's attention.

143.   The '989 patent has one independent claim, claim 1, which recites:

A water soluble conjugated polymer having the structure of the formula:

$$G_2 - \left[ \left( Ar \right)_a - \left( Mu \right)_b - \left( L_1 \right)_c - \left( L_2 \right)_d \right]_n - G_1$$

wherein:

Ar is an aryl or heteroaryl unit substituted with a non-ionic side group capable of imparting solubility in water;

MU is a polymer modifying unit or band gap modifying unit that is evenly or randomly distributed along the polymer main chain and is optionally substituted with one or more optionally substituted substituents selected from halogen, hydroxyl, $C_1$-$C_{12}$ alkyl, $C_2$-$C_{12}$ alkene, $C_2$-$C_{12}$ alkyne, $C_3$-$C_{12}$ cycloalkyl, $C_1$-$C_{12}$ haloalkyl, $C_1$-$C_{12}$ alkoxy, $C_2$-$C_{18}$ (hetero)aryloxy, $C_2$-$C_{18}$ (hetero)arylamino, a $C_2$-$C_{18}$ (hetero)aryl group and $(CH_2)_{x'}(OCH_2CH_2)_{y'}OCH_3$ where x′ is independently an integer from 0-20 and y′ is independently an integer from 0 to 50;

optional linkers $L_1$ and $L_2$ are each independently an aryl or a heteroaryl group evenly or randomly distributed along the polymer main chain and are substituted with one or more pendant chains terminated with: i) a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated ester, N-hydroxysuccinimidyl, hydrazine, hydrazide, hydrazone, azide, alkyne, aldehyde, thiol, and protected groups thereof for conjugation to a molecule or biomolecule; or ii) a conjugated organic dye or biomolecule;

$G_1$ and $G_2$ are each independently selected from hydrogen, halogen, alkyne, optionally substituted aryl, optionally substituted heteroaryl, halogen substituted aryl, boronic acid substituted aryl, boronic ester substituted aryl, boronic ester, boronic acid, optionally substituted fluorene and aryl or heteroaryl substituted with one or more pendant chains terminated with: i) a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated esters, N-hydroxysuccinimidyl, hydrazine, hydrazide, hydrazone, azide, alkyne, aldehyde, thiol, and protected groups thereof for conjugation to a molecule or biomolecule; or ii) a conjugated organic dye or biomolecule;

wherein n is the number of repeat units;

the polymer comprises at least 1 functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated ester, N-hydroxysuccinimidyl, hydrazines, hydrazide, hydrazone, azide, alkyne, aldehyde, and thiol within $G_1$, $G_2$, $L_1$ or $L_2$, or a conjugated organic dye or biomolecule; and

a, b, c and d define the mol % of each unit within the structure which each can be evenly or randomly repeated and where a is a mol

% from 10 to 100%, b is a mol % from 0 to 90%, and each c and d are mol % from 0 to 25%.

144.   On information and belief, each of the Accused Products comprises a water-soluble conjugated polymer having the structure of the formula recited in claim 1 of the '989 patent, either literally or under the doctrine of equivalent; the water soluble conjugated polymer comprises an Ar group that is an aryl unit substituted with a non-ionic side group capable of imparting solubility in water; the water soluble conjugated polymer includes end groups from the recited $G_1$ and $G_2$ end groups as a result of its synthesis via Suzuki coupling as well as the inclusion of functional groups for antibody conjugation, or include a conjugated biomolecule such as an antibody; the conjugated polymers comprises at least one recited functional group that allows for functional conjugation to another molecule, substrate or biomolecule; and each of the conjugated polymers comprises the units in the formula recited in claim 1 in proportions such that a is from 10 to 100 mol%, b is from 0 to 90 mol%, and c and d are from 0 to 25 mol%.

145.   Beckman has infringed, and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1of the '989 patent by making, importing, using, offering for sale, and selling the Accused Products.  Beckman has committed and continues to commit these acts of infringement without license or authorization.

146.   Beckman's infringement of the '989 patent is willful and deliberate. As of March 30, 2021, the date Beckman announced its launch of its SuperNova product line, Beckman knew or should have known that its making, importing, using, offering for sale, and selling the Accused Products constituted an unjustifiably high risk of infringement of the '989 patent.

147.   Plaintiffs have suffered damages as a result of Beckman's infringement of the '989 patent and will continue to suffer damages as long as those infringing activities continue.

148.   Plaintiffs have been and will continue to be irreparably harmed by Beckman's infringement of the '989 patent unless and until such infringement is enjoined by this Court.

**Count XI: Infringement of U.S. Patent No. 10,641,775**

149.   Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

150.   Beckman has known of the '775 patent since at least February 26, 2021 when BD brought the allowed claims of U.S. Patent Application No. 16/886,323, which issued as the '546 patent, to Beckman's attention.  The '775 patent is listed on the face of the published application that led to the '546 patent.

151.   The '775 patent contains an independent claim, claim 1, which recites:

A water soluble conjugated polymer having a backbone of π-conjugated repeat units and the structure of the formula:



wherein:

Ar is polycyclic repeat unit substituted with an ethylene glycol oligomer side group;

MU is a polymer modifying unit or band gap modifying unit that is evenly or randomly distributed along the polymer main chain and is optionally substituted with one or more optionally substituted substituents selected from halogen, hydroxyl, Cl-C12 alkyl, C2-C12 alkene, C2-C12 alkyne, C3-C12 cycloalkyl, Cl-C12 haloalkyl, Cl-C12 alkoxy, C2-C18 (hetero)aryloxy, C2-C18 (hetero)arylamino, a C2-C18 (hetero)aryl group and (CH2)x'(OCH2CH2)y'OCH3 where x' is independently an integer from 0-20 and y' is independently an integer from 0 to 50;

PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

optional linkers Ll and L2 are each independently an aryl or a heteroaryl group evenly or randomly distributed along the polymer main chain and are substituted with one or more pendant chains terminated with: i) a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated ester, N-hydroxysuccinimidyl, hydrazine, hydrazide, hydrazone, azide, alkyne, aldehyde, thiol, and protected groups thereof for conjugation to a molecule or biomolecule; or ii) a conjugated organic dye or biomolecule;

G1 and G2 are each independently selected from hydrogen, halogen, alkyne, optionally substituted aryl, optionally substituted heteroaryl, halogen substituted aryl, boronic acid substituted aryl, boronic ester substituted aryl, boronic ester, boronic acid, optionally substituted fluorene and aryl or heteroaryl substituted with one or more pendant chains terminated with a conjugated biomolecule;

wherein the polymer comprises a conjugated biomolecule;

n is an integer from 1 to about 10,000; and

a, b, c and d define the mol % of each unit within the structure which each can be evenly or randomly repeated and where a is a mol % from 10 to 100%, b is a mol % from 0 to 90%, and each c and d are mol % from 0 to 25%.

152.   On information and belief, each of the Accused Products comprises a water-soluble conjugated polymer having a backbone of between 1 and about 10,000 π-conjugated repeat units, comprising the structure of the formula recited in claim 1 of the '775 patent, either literally or under the doctrine of equivalents; the water-soluble conjugated polymer comprises an Ar group that is a polycyclic repeat unit substituted with an ethylene glycol oligomer side group; the water soluble conjugated polymer includes end groups from the recited G1 and G2 end groups as a result of its synthesis via Suzuki coupling as well as the inclusion of functional groups for antibody conjugation, or include a conjugated biomolecule such as an antibody; and the conjugated polymer comprises the units in the formula recited in claim 1 in proportions such that a is from 10 to 100 mol%, b is 0 mol%, and c and

d are from  0 to 25 mol%.

153.   Beckman has infringed, and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '775 patent by making, importing, using, offering for sale, and selling the Accused Products.  Beckman has committed and continues to commit these acts of infringement without license or authorization.

154.   Beckman's infringement of the '775 patent is willful and deliberate. As of March 30, 2021, the date Beckman announced its launch of its SuperNova product line, Beckman knew or should have known that its making, importing, using, offering for sale, and selling the Accused Products constituted an unjustifiably high risk of infringement of the '775 patent.

155.   Plaintiffs have suffered damages as a result of Beckman's infringement of the '775 patent and will continue to suffer damages as long as those infringing activities continue.

156.   Plaintiffs have been and will continue to be irreparably harmed by Beckman's infringement of the '775 patent unless and until such infringement is enjoined by this Court.

**<u>Count XII: Infringement of U.S. Patent No. 10,955,417</u>**

157.   Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

158.   Beckman has known of the allowed claims of U.S. Patent Application No. 16/746,498 (the "'498 Application"), since at least February 26, 2021, when BD brought them to Beckman's attention.  The '498 Application issued as the '417 patent on March 23, 2021.

159.   The '417 patent contains an independent claim, claim 1, which recites:

A conjugated polymer having a backbone of n-conjugated repeat units and the structure of the formula:

wherein:

Ar is polycyclic repeat unit substituted with an ethylene glycol oligomer side group;

MU is a polymer modifying unit or band gap modifying unit that is evenly or randomly distributed along the polymer main chain and is optionally substituted with one or more optionally substituted substituents selected from halogen, hydroxyl, C1-C12 alkyl, C2-C12 alkene, C2-C12 alkyne, C3-C12 cycloalkyl, C1-C12 haloalkyl, C1-C12 alkoxy, C2-C18 (hetero)aryloxy, C2-C18 (hetero)arylamino, a C2-C18 (hetero)aryl group and $(CH_2)x'(OCH_2CH_2)y'OCH_3$ where $x'$ is independently an integer from 0-20 and $y'$ is independently an integer from 0 to 50;

optional linkers L1 and L2 are each independently an aryl or a heteroaryl group evenly or randomly distributed along the polymer main chain and are substituted with one or more pendant chains terminated with: i) a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated ester, N-hydroxysuccinimidyl, hydrazine, hydrazide, hydrazone, azide, alkyne, aldehyde, thiol, and protected groups thereof for conjugation to a molecule or biomolecule; or ii) a conjugated organic dye or biomolecule;

G1 and G2 are each independently selected from hydrogen, halogen, alkyne, optionally substituted aryl, optionally substituted heteroaryl, halogen substituted aryl, boronic acid substituted aryl, boronic ester substituted aryl, boronic ester, boronic acid, optionally substituted fluorene and aryl or heteroaryl substituted with one or more pendant chains terminated with a conjugated biomolecule and at least one of G1 and G2 comprises a conjugated biomolecule;

wherein the polymer comprises a conjugated biomolecule;

n is an integer from 1 to about 10,000; and

a, b, c and d define the mol % of each unit within the structure which each can be evenly or randomly repeated and where a is a mol % from 10 to 100%, b is a mol % from 0 to 90%, and each c and d are mol % from 0 to 25%.

160.    On information and belief, each of the Accused Products comprises a conjugated polymer having a backbone of between 1 and about 10,000 repeat units, comprising the structure of the formula recited in claim 1 of the '417 patent, either literally or under the doctrine of equivalents; the conjugated polymer comprises an Ar group that is a polycyclic repeat unit substituted with an ethylene glycol oligomer side group; the conjugated polymer includes end groups from the recited G1 and G2 end groups as a result of its synthesis via Suzuki coupling as well as the inclusion of functional groups for antibody conjugation, or include a conjugated biomolecule such as an antibody; and the conjugated polymer comprises the units in the formula recited in claim 1 in proportions such that a is from 10 to 100 mol %, b is from 0 to 90 mol%, and c and d are from 0 to 25 mol%.  The conjugated polymer of the Accused Products comprises a conjugated biomolecule, i.e., an antibody.

161.    Beckman has infringed, and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '417 patent by making, importing, using, offering for sale, and selling the Accused Products.  Beckman has committed and continues to commit these acts of infringement without license or authorization.

162.    Beckman's infringement of the '417 patent is willful and deliberate. As of March 30, 2021, the date Beckman announced its launch of its SuperNova product line, Beckman knew or should have known that its making, importing, using, offering for sale, and selling the Accused Products constituted an unjustifiably high risk of infringement of the '417 patent.

163.    Plaintiffs have suffered damages as a result of Beckman's infringement of the '417 patent and will continue to suffer damages as long as

those infringing activities continue.

164.   Plaintiffs have been and will continue to be irreparably harmed by Beckman's infringement of the '417 patent unless and until such infringement is enjoined by this Court.

## Count XIII: Infringement of U.S. Patent No. 10,962,546

165.   Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

166.   Since at least February 26, 2021, Beckman has known of the allowed claims of U.S. Patent Application No. 16/886,323 (the "'323 Application"), when BD brought them to Beckman's attention.  The '323 Application issued as the '546 patent on March 30, 2021.

167.   The '546 patent contains an independent claim, claim 1, which recites:

A water soluble conjugated polymer having the structure of the formula:



wherein:

Ar is polycyclic repeat unit;

MU is a polymer modifying unit or band gap modifying unit that is evenly or randomly distributed along the polymer main chain and is optionally substituted with one or more optionally substituted substituents selected from halogen, hydroxyl, $C_1$-$C_{12}$ alkyl, $C_2$-$C_{12}$ alkene, $C_2$-$C_{12}$ alkyne, $C_3$-$C_{12}$ cycloalkyl, $C_1$-$C_{12}$ haloalkyl, $C_1$-$C_{12}$ alkoxy, $C_2$-$C_{18}$ (hetero)aryloxy, $C_2$-$C_{18}$ (hetero)arylamino, a $C_2$-$C_{18}$ (hetero)aryl group and $(CH_2)_{x'}(OCH_2CH_2)_{y'}OCH_3$ where $x'$ is independently an integer from 0-20 and $y'$ is independently an integer from 0 to 50;

optional linkers L1 and L2 are each independently an aryl or a heteroaryl group evenly or randomly distributed along the

polymer main chain and are substituted with one or more pendant chains terminated with: i) a functional group selected from amine, carbamate, carboxylic acid, carboxylate, maleimide, activated ester, N-hydroxysuccinimidyl, hydrazine, hydrazide, hydrazone, azide, alkyne, aldehyde, thiol, and protected groups thereof for conjugation to a molecule or biomolecule; or ii) a conjugated organic dye or biomolecule;

G1 and G2 are each independently selected from hydrogen, halogen, alkyne, optionally substituted aryl, optionally substituted heteroaryl, halogen substituted aryl, boronic acid substituted aryl, boronic ester substituted aryl, boronic ester, boronic acid, optionally substituted fluorene and aryl or heteroaryl substituted with one or more pendant chains terminated with a conjugated biomolecule;

n is an integer from 1 to about 10,000; and

a, b, c and d define the mol % of each unit within the structure which each can be evenly or randomly repeated and where a is a mol % from 10 to 100%, b is a mol % from 0 to 90%, and each c and d are mol % from 0 to 25%.

168.   On information and belief, each of the Accused Products comprises a conjugated polymer having a backbone of between 1 and about 10,000 $\pi$-conjugated repeat units  and the structure of the formula recited in claim 1 of the '546 patent, either literally or under the doctrine of equivalents; the water soluble conjugated polymer comprises an Ar unit that is a polycylic repeat unit; the water soluble conjugated polymer includes end groups from the recited G1 and G2 end groups as a result of its synthesis via Suzuki coupling as well as the inclusion of functional groups for antibody conjugation, or include a conjugated biomolecule such as an antibody; and the conjugated polymer comprises the units in the formula recited in claim 1 in proportions such that a is from 10 to 100 mol%, b is from 0 to 90 mol%, and c and d are from  0 to 25 mol%.

169.   Beckman has infringed, and continues to infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '546 patent by making, importing, using, offering for sale, and selling the Accused Products.  Beckman

has committed and continues to commit these acts of infringement without license or authorization.

170.   Beckman's infringement of the '546 patent is willful and deliberate. As of March 30, 2021, the date Beckman announced its launch of its SuperNova product line, Beckman knew or should have known that its making, importing, using, offering for sale, and selling the Accused Products constituted an unjustifiably high risk of infringement of the '546 patent.

171.   Plaintiffs have suffered damages as a result of Beckman's infringement of the '546 patent and will continue to suffer damages as long as those infringing activities continue.

172.   Plaintiffs have been and will continue to be irreparably harmed by Beckman's infringement of the '546 patent unless and until such infringement is enjoined by this Court.

## JURY DEMAND

173.   Plaintiffs demand a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.   Enter judgment that Beckman has infringed the '193, '613, '303, '869, '008, '838, '620, '648, '285, '989, '775, '417, and '546 patents;

B.   Enter a preliminary injunction enjoining Beckman, its officers, directors, servants, managers, employees, agents, attorneys, successors and assignees, and all persons in active concert or participation with any of them, from further acts of infringement of the '193, '613, '303, '869, '008, '838, '620, '648, '285, '989, '775, '417, and '546 patents, under 35 U.S.C. § 283;

C.   Enter a permanent injunction enjoining Beckman, its officers, directors, servants, managers, employees, agents, attorneys, successors and assignees, and all persons in active concert or participation with any of them, from further acts of infringement of the '193, '613, '303, '869, '008, '838, '620, '648,

'285, '989, '775, '417, and '546 patents, under 35 U.S.C. § 283;

       D.      Award damages adequate to compensate Plaintiffs for Beckman's infringement together with pre-judgment and post-judgment interest and costs, under 35 U.S.C. § 284;

       E.      Award treble damages for Beckman's willful infringement;

       F.      Enter judgment that this case is exceptional and award Plaintiffs their reasonable attorneys' fees, costs, and expenses, under 35 U.S.C. § 285; and

       G.      Award such other and further relief as this Court may deem just and proper.

Dated:  June 25, 2021           Respectfully submitted,

                              By s/  Jesse Hindman
                              Attorney for Plaintiffs
                              Email: jesse@hindmanapc.com

PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT