UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BECTON, DICKINSON AND COMPANY; SIRIGEN, INC; and SIRIGEN II LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>BECKMAN COULTER, INC.,<br><br>Defendant. | Case No.: 21cv1173-CAB (NLS)<br><br>**ORDER REGARDING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 1**<br><br>**[ECF No. 81]** |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 1, wherein Defendant Beckman Coulter, Inc. ("Beckman") contends that Plaintiffs' Disclosure of Asserted Claims and Infringement Contentions fails to comply with Patent Local Rule Requirements. ECF No. 81. Upon consideration and for the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

I. <u>BACKGROUND</u>

This is an action for patent infringement where Plaintiffs accuse Beckman of

infringing thirteen of their patents.[1]  The asserted patents all relate to chemical structures of fluorescent polymer dyes that are used in flow cytometry.  The dyes allow scientists to label and detect biological materials of interest in a sample, including small populations of difficult to detect proteins and cells.  ECF No. 1 at ¶ 2.  The accused products are Beckman's polymer dye products, its SuperNova Fluorescent Polymer Dyes.  *Id.* at ¶ 4.

After filing the complaint, Plaintiffs moved for a preliminary injunction.  ECF No. 9.  On October 14, 2021, the Court held a hearing on the motion and denied the request for a preliminary injunction.  ECF No. 66.  While the motion was pending, the Court entered a scheduling order, permitting the parties to begin discovery and setting deadlines for exchanging infringement and invalidity contentions.  ECF No. 56.

At issue in the present motion are Plaintiffs' Infringement Contentions.  Beckman argues that the disclosure of accused products and infringement theories in the contentions fail to meet the requirements under Patent L.R. 3.1(b) and 3.1(c).  ECF No. 81 at 2.

## II.  **DISCUSSION**

The Patent Local Rules were designed to streamline discovery and require parties to crystallize their theories early in the case to prevent "the shifting sands" approach to claim construction."  *Ameranth, Inc. v. Pizza Hut, Inc.*, No. 12cv1627-JLS (NLS), 2013 WL 3894880, at *2 (S.D. Cal. July 26, 2013).  The Patent Local Rules accomplish this "by requiring both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery.  The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories."  *Wi-LAN Inc. v. LG Elecs.,*

---

[1] The thirteen patents are U.S. Patent No. 8,362,193, No. 8,455,613, No. 8,575,303, No. 9,139,869, No. 9,547,008, No. 10,094,838, No. 10,288,620, No. 10,302,648, No. 10,365,285, No. 10,458,989, No. 10,641,775, No. 10,955,417, and No. 10,962,546 (collectively, the "Asserted Patents").

*Inc.*, No. 18cv01577-H (BGS), 2019 WL 5790999, at *2 (S.D. Cal. Sept. 18, 2019) (citation omitted).

Defendant Beckman argues that Plaintiffs' disclosure of certain accused products and infringement theories fails to meet the requirements of Patent Local Rules 3.1(b) and (c). The Court will address each of these issues in turn.

### A.     Identification of Accused Products under Patent L.R. 3.1(b)

Patent Local Rule 3.1 governs disclosure of asserted claim and infringement contentions. Under Rule 3.1(b), Plaintiffs must disclose "[s]eparately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality . . . of each opposing party of which the party is aware." The identification "must be as specific as possible," with each product, device, and apparatus "identified by name or model number, if known." Patent L.R. 3.1(b). The Patent Local Rules "place the burden of specifically identifying all accused devices on the plaintiff." *SPH Am., LLC v. Huawei Techs., Co.*, No. 13cv2323-CAB (KSC), 2016 WL 11661391, at *1 (S.D. Cal. July 5, 2016). This generally requires "specific identification of accused products" and does not tolerate "broad categorical identification or the use of mere representative examples." *Infineon Technologies AG v. Volterra Semiconductor Corp.*, No. 11cv6239-MMC (DMR), 2012 WL 6184394, at *3 (N.D. Cal. Dec. 11, 2012).

Beckman argues that Plaintiffs fail to comply with Rule 3.1(b) when it included a category of products referred to as "Development/Manufacturing Dyes" as Accused Products. These are generally described as "Polymer base dyes and polymer tandem dyes made in the course of Beckman's internal research and development program, or made as intermediates while making the SuperNova Dyes." ECF No. 80-1 at 3. These are further broken down to three categories: (1) Development Dyes; (2) Manufacturing Dyes; and (3) UV Development Dyes, which are further defined as follows:

(1): <u>Development Dyes</u> - Polymer base dyes and polymer tandem dyes made in the course of Beckman's internal research and development program. Examples of Beckman's Development Dyes include, but are not limited to,

|   |   |
|---|---|
| | those disclosed in BEC-SN00000037 at -40 and -44. Development Dyes include any other dyes with similar or related structures being developed by Beckman in connection with the development of SuperNova dyes, such as those found throughout Beckman's produced lab notebooks. |
| (2): | <u>Manufacturing Dyes</u>:  Examples of Manufacturing Dyes include intermediates made by Beckman in the process of making the SuperNova Dyes. The manufacturing intermediates are set forth in the preparation protocols produced by Beckman at BEC-SN00000441 at 454. |
| (3): | <u>UV Development Dyes</u>: The Development/Manufacturing Dyes also include UV-excited dyes in development by Beckman and, on information and belief, used by Beckman (the "UV Development Dyes"). See, e.g., BEC-SN-00000037 at -40 and -44; BEC-SN00000273 at -295, and BEC-SN_00006277; BEC-SN-00005531; BEC-SN-00000313. |

*Id.* at 4.

Beckman argues that this type of identification of products is not sufficient under Rule 3.1(b) because the rule does not permit categorical or functional identifications nor representative examples.  ECF No. 80 at 3.  In support, Beckman cites a string of cases. *See, e.g.*, *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9, 2017) (while certain accused products were identified by name and model number, finding insufficient identification where plaintiff also included in its accused products "Samsung 'smart phones' with a screen, camera, processor, compass, and accelerometer," "all 'tablets' shipped between 2010 and 2013," "the Samsung Galaxy, Galaxy S, Galaxy Note, and Galaxy Tab 'product lines.'"); *Uniloc USA, Inc. v. Apple Inc.*, No. C 18-00360 WHA, 2018 WL 3219486, at *3 (N.D. Cal. July 2, 2018) (finding insufficient identification of products including categorical products (such as "Apple tablets") followed by representative samples ("e.g. iPad 9.7, iPad Air 2, . . . running on iOS 9 or later") and only limiting products to those specifically named); *Vigilos LLC v. Sling Media Inc.*, No. C-11-04117 SBA (EDL), 2012 WL 9973147, at *3–

4 (N.D. Cal. July 12, 2012) (finding insufficient identification of products where plaintiff only provided a general list by category/functionality: "all Slingbox products (including Slingbox SOLO and Slingbox PRO–HD), all Sling Adapter products, and all SlingLoaded products made, sold or offered for sale by any of the Defendants, including the DISH ViP922 SlingLoaded DVR and all EchoStar Set–Top Boxes using Placeshifting/TV Everywhere technology"); *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 4479305, at *1–2 (N.D. Cal. Sept. 26, 2011) (finding inadequate identification where products were identified as "(i) 'Android' or 'the Android Platform;' (ii) Google devices running Android; and (iii) other mobile devices running Android. Representative examples of Google devices running Android include the Google Dev Phones, the Google Nexus One, and the Google Nexus S. Representative examples of other mobile devices running Android include HTC's EVO 4G, HTC's Droid Incredible, HTC's G2, Motorola's Droid, and Samsung's Captivate.").

While the groupings used in Plaintiffs' contentions are not quite as broad as the groupings used in some of these cases, the groupings are not limited to specific dyes and do include dyes by way of example.  For development dyes, the disclosure describes them as "polymer base dyes and polymer tandem dyes made in the course of Beckman's internal research and development program" and by way of "example" and "include, but are not limited to, those disclosed in BEC-SN00000037 at -40 and -44." ECF No. 80-4. They also include "any other dyes with similar or related structures" but the contentions do not identify what sort of structures qualify as "similar or related."  For manufacturing dyes, the contentions state that this category includes "examples" such as "intermediates made by Beckman in the process of making the SuperNova Dyes" and are "set forth in the preparation protocols produced by Beckman at BEC-SN00000441 at 454." ECF No. 80-8.  This document does not set forth any specific dyes but only shows a process flow chart.  For UV development dyes, the disclosure describes them as "UV-excited dyes in development by Beckman" and cites to several documents.  ECF No. 80-4; ECF No. 80-5; ECF No. 80-6; ECF No. 80-7.  Thus, it appears that these disclosures are not sufficient

under Rule 3.1(b) in their use of descriptions and examples to identify the accused products.

Defending its disclosures, Plaintiffs argue that they made their disclosures with the information that they had since this category of dyes is based on non-public information. ECF No. 80 at 9.  Plaintiffs argue that the use of product groups is not categorically prohibited in infringement contentions as Beckman contends. *Id.* at 11.  Upon review of the cases, the Court finds that they do not save their position.  The first two cases that Plaintiffs cite for this proposition deal with adequacy of infringement contentions themselves under Rule 3.1(c), not identification of accused products under Rule 3.1(b). *See Fr. Telecom, S.A. v. Marvell Semiconductor, Inc.*, No. 12-cv-04967 WHA (NC), 2013 U.S. Dist. LEXIS 63823, at *11 (N.D. Cal. May 3, 2013); *FusionArc, Inc. v. Solidus Networks, Inc.*, No. C 06-06760 RMW (RS), 2007 U.S. Dist. LEXIS 28970, at *8 (N.D. Cal. Apr. 5, 2007).  These cases state that infringement contentions must identify how the accused products infringe "with as much specificity as possible with the information currently available to it." *Fr.* Telecom, 2013 U.S. Dist. LEXIS 63823, at *11.  This does not alleviate the requirement to separately identify accused products under Rule 3.1(b).  The disclosures under 3.1(b) and 3.1(c) may serve different purposes.  Infringement contentions under 3.1(c) put the other party on notice of the theory of infringement—if certain specific products operate in the same way and infringe in the same way, permitting grouping of products under this Rule is reasonable and still provides the other party with the same level of notice. *See Uniloc USA, Inc. v. Apple Inc.*, No. C 18-00360 WHA, 2018 WL 3219486, at *3 (N.D. Cal. July 2, 2018) ("[Rule 3.1(c) does not necessarily require a separate claim chart for each accused product.  Representative infringement contentions may suffice when supported by adequate analysis showing that the accused products share the same critical characteristics.) (citation omitted).  However, disclosure of accused products may serve a different purpose under Rule 3.1(b), for example, to permit calculation of damages which depends on specific identification of accused products.

1 | Plaintiffs also cite to *JVC Kenwood Corp. v. Nero, Inc.*, No. 12-cv-03662-MRP-JC, 2012 U.S. Dist. LEXIS 207786, at *6 (C.D. Cal. Nov. 20, 2012), which says that product groups are "sometimes acceptable" for infringement contentions.  It is true that in making this statement, the *JVC* court rejected the position cited in the same cases that Beckman cites to.  *Id.* at *6 n.2.  However, the case still dealt with infringement charts under 3.1(c) and for the reasons above, does not alleviate it disclosure obligations under Rule 3.1(b).  *Id.* at *6 ("the central question is whether the use of product groups deprives the defendant of adequate notice about the patentee's infringement theories").

The Court is not unsympathetic to Plaintiffs contention that they disclosed the product groups to the best of their ability at this time, given that the Development/Manufacturing Dyes are based on non-public information that is in the control of Beckman.  However, Plaintiffs are not left without recourse since disclosure is ongoing and Plaintiffs may move to amend their infringement contentions.  *See Uniloc*, 2018 WL 3219486, at *3 (limiting accused products to those "actually listed in its infringement contentions" and holding that proper recourse is to move to amend infringement contentions, not to use "strategic open-ended language" in the contentions). Patent Local Rule 3.6 provides for when during the case Plaintiffs may amend their infringement contentions, including upon a showing of "good cause."  While this district's Patent Local Rules do not include a similar section, our sister court in the Northern District of California specifically lists "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent effort" as an example of good cause to support amendment of infringement contentions. Patent L.R. 3-6(c) (N.D. Cal.); *see also Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *10 (N.D. Cal. Apr. 2, 2015); *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-CV-05236-YGR, 2012 WL 6000798, at *6 (N.D. Cal. Nov. 30, 2012); *Mediatek, Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341 YGR JSC, 2013 WL 588760, at *4 (N.D. Cal. Feb. 13, 2013).  Diligence is a factor considered in this district as well, where the good cause standard focuses on diligence on the part of the

party seeking amendment and prejudice to the opposing party. *Regents of Univ. of California v. Affymetrix, Inc.*, No. 17-CV-01394-H-NLS, 2018 WL 4053318, at *2 (S.D. Cal. Aug. 24, 2018)

Accordingly, Beckman's motion on this issue is **GRANTED IN PART**. The product disclosures on the Development/Manufacturing Dyes will be limited to only those that are identified specifically in the documents that have been cited in the infringement contentions. As discovery continues, Plaintiffs may move to amend its contentions to include any other Development/Manufacturing Dyes that can be specifically identified.

### B. Infringement Contentions

Further, under Rule 3.1(c), Plaintiffs must identify "specifically where each element of each asserted claim is found" within the accused product. *Id.* at 3.1(c). This rule does not necessarily require a separate claim chart for each accused product—"[R]epresentative infringement contentions may suffice" when "supported by adequate analysis showing that the accused products share the same critical characteristics." *Uniloc*, 2018 WL 3219486, at *3.

Beckman argues that Plaintiffs' infringement charts as to the Development/Manufacturing Dyes are insufficient because they mostly are variations of the following phrase: "On information and belief, the Development Conjugates and the Development/Manufacturing Dyes contain SuperNova v428 or another conjugated polymer and meet this claim term either literally or under the doctrine of equivalents in the same way. *See, e.g.*, BEC-SN-00000001-32 at 06; BEC-SN-00000138-73 at 40- 41; BEC-SN-00000174-216 at 175; BEC-SN-00006438-51 at 41." *See, e.g.*, ECF No. 80-2 at 4. Beckman argues that such "on information and belief" disclosures are not sufficient. ECF No. 80 at 5-6.

Plaintiffs counter that their infringement charts disclose to Beckman how the commercialized dyes meet the limitations of the asserted claims and essentially disclose that the Development/Manufacturing Dyes meet those limitations in the same way. ECF

No. 80 at 13.  Plaintiffs state that when their theory of infringement is different for the Development/Manufacturing Dyes, they specifically state how in the infringement charts. *Id.* at 12-14.

While this is a close call, the Court concludes that the infringement contentions for the Development/Manufacturing Dyes that have been specifically named is sufficient. The focus of infringement contentions is to provide the opposing party with notice of the theory of infringement—here, unless otherwise stated, Plaintiffs state that the Development/Manufacturing Dyes infringe in the same way as they allege the commercialized dyes infringe.  This precludes Plaintiffs from putting forth a different infringement theory in the future as to the Development/Manufacturing Dyes and does not leave Beckman in the dark as to the infringement theory.  Moreover, Plaintiffs do not make the "on information and belief" allegations without any factual support—at the end of these statements, they cite to produced documents that support their allegation.  *See, e.g.*, *See, e.g.*, ECF No. 80-2 at 4 (citing to produced documents).

Accordingly, Beckman's motion as to this issue is **DENIED**.  While the Court is limiting the Development/Manufacturing Dyes to those that are identified specifically in the documents that have been cited in the infringement contentions, the Court finds that the theories of infringement that have been disclosed in the infringement chart to be sufficient.

//
//
//
//
//
//
//
//
//

### III.  CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Beckman's motion.  The Development/Manufacturing Dyes that are accused products will be limited to those that are identified specifically in the documents that have been cited in the infringement contentions.  The infringement theory disclosures for these in the infringement charts will not be stricken.

**IT IS SO ORDERED.**

Dated:  January 19, 2022

Hon. Nita L. Stormes
United States Magistrate Judge